1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF GEORGIA
2              AUGUSTA DIVISION

3


4  UNITED STATES OF AMERICA,      :
                                  :
5     v.                          :    CASE NUMBER 1:18-CR-00045
                                  :
6  TIMOTHY JERMAINE PATE,         :
                                  :
7       Defendant.                :
   _____

8

9

10

11

12          TRANSCRIPT OF ARRAIGNMENT

13     BEFORE THE HONORABLE R. STAN BAKER
          United States District Judge
14
           United States Courthouse
15             125 Bull Street
             Savannah, Georgia
16          September 7, 2018

17

18

19

20

21

22  _____

23  TRANSCRIBED BY:  Victoria L. Root, CCR
                     United States Court Reporter
24                   Post Office Box 10552
                     Savannah, Georgia  31412
25                   (912) 650-4066

1                        A P P E A R A N C E S

2


3    FOR THE GOVERNMENT:

4         CHRISTOPHER HOWARD, Esquire
          Assistant United States Attorney
5         22 Barnard Street, Suite 300
          Savannah, Georgia  31401
6         (912) 652-4422

7


8    STANDBY COUNSEL/NOW APPOINTED FOR THE DEFENDANT:

9         JUSTIN D. MAINES, Esquire
          Law Office of Justin Maines
10        114 Barnard Street, Suite 2C
          Savannah, Georgia  31401
11        (912) 358-8485

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1    (Call to order at 8:33 a.m.)

2         THE COURT:  Thank you, Marshal.

3         Please call our case.

4         COURT CLERK:  *United States of America v. Timothy*

5  *Jermaine Pate*; Chris Howard for the Government.  Mr. Pate is

6  present along with J. D. Maines as standby counsel.

7         MR. HOWARD:  The Government is ready to proceed,

8  Your Honor.

9         THE COURT:  Good morning.  Thank you, Mr. Howard.

10        THE DEFENDANT:  Sir, if I could inquire.  If -- I

11 need 5 minutes to speak with the prosecution to see if we can

12 do case settlement.

13        THE COURT:  Yes, sir.  Mr. Pate, what we're going to

14 do right now -- and we'll certainly give you some time.

15        THE DEFENDANT:  Okay.

16        THE COURT:  What we're going to do today is we're

17 going to have your initial appearance and your arraignment.

18 And if we need to --

19        Mr. Maines, thank you for being present.  I should

20 have said you may have a seat.  Thank you.

21        What we're going to do is your initial appearance and

22 your arraignment and conduct a Faretta inquiry because you've

23 indicated somewhat that you may want to represent yourself in

24 this case.

1          Let me remind you at the beginning that it works much

2    better if I speak and no one speaks over me and then I give you

3    the opportunity to speak, just like we're doing right now.

4          THE DEFENDANT:  Fair enough.

5          THE COURT:  Last time, we had those issues where I

6    was trying to speak, and you were speaking over me, and no one

7    could hear what I was trying to say.  I'm sure we won't have

8    that this morning.  But if we do, I'm going to have no other

9    option but to remove you from the courtroom, and you won't be

10   able to participate in the hearing.

11         And that is the absolute last resort.  That's not

12   what I want to occur.  But I just want to be sure that you

13   understand that if we do have outbursts or we do have the type

14   of behavior that you exhibited last time, I'm going to have

15   to remove you from the courtroom.  Again, I don't think you're

16   going to do that this morning, but just understand that.

17         Do you understand that, sir?

18         THE DEFENDANT:  Fair enough.

19         THE COURT:  Okay.  Well, what we're here is for your

20   initial appearance and your arraignment.  As I advised you last

21   time, you have the right to remain silent on these charges.

22   You don't have to say anything to me, to law enforcement, to

23   the Government, to anybody about the charges against you.

24         If you give up your right to remain silent, whatever

25   you say could be used against you not only in this case but

perhaps in another case as well if there should be some other case.  If you gave up your right to remain silent, you can reassert it whenever you want.

So if you gave up your right to remain silent in the past, you don't have to say anything in the -- now or in the future.  Or if you give up your right to remain silent in the future, you can reassert it at any time.

Also, you have the right for an attorney to be present and representing you at any time throughout this case, as I'll advise you in a second, but particularly if you choose to give up your right to remain silent.  Okay?

THE DEFENDANT:  Okay.

THE COURT:  Do you understand your right to remain silent, sir?

THE DEFENDANT:  I comprehend, yes, sir.

THE COURT:  Very good.

Additionally, you have the right for an attorney to represent you both in court and out of court at all stages of this case.

Now, as I advised you last time, you have the right to represent yourself as well.  I would have to make what's called a Faretta inquiry to be certain that you knowingly, voluntarily, and intelligently give up your right to counsel.

But even if you can't afford an attorney, one of the great things about our court process is that I would appoint an

1    attorney to represent you at no cost to you whatsoever --

2              THE DEFENDANT:  Okay.

3              THE COURT:  -- and that attorney would represent you

4    throughout the case.

5              THE DEFENDANT:  I don't need --

6              THE COURT:  You, of course --

7              THE DEFENDANT:  -- an attorney.

8              THE COURT:  -- have the right, too, to retain an

9    attorney of your own choosing.  Even if I appointed you a

10   lawyer, you could then go hire a lawyer of your own choosing,

11   but then your appointed lawyer would no longer represent you.

12             It's my understanding, though, from your body

13   language right now and from what you told me before that you

14   want to represent yourself.

15             Is that right?

16             THE DEFENDANT:  Yes.  I can represent the account.

17             THE COURT:  Okay.  We're going to do what's called a

18   Faretta inquiry now because we can't even proceed with an

19   arraignment without you having counsel.  Okay?  So we're going

20   to conduct what's called a Faretta inquiry right now in which

21   I'm going to try to make certain that your choice to represent

22   yourself is knowingly, voluntarily, and intelligently made.

23             Through the course of this inquiry, I am going to ask

24   you a number of questions, and I'm going to give you a good bit

25   of information.  As we talked about earlier, it works better if

1    I talk and then you respond.  But if you have any confusion at

2    all about the information I'm giving you or the questions that

3    I'm asking you, please be certain to ask for clarification.

4            THE DEFENDANT:  Okay.

5            THE COURT:  Additionally, Mr. Maines is here as

6    standby counsel.  Even though you don't want him to represent

7    you, if you had a question during this Faretta inquiry about a

8    legal issue, you could refer to him and ask for some

9    confidential advice about this decision.

10           THE DEFENDANT:  Okay.

11           THE COURT:  Okay?

12           THE DEFENDANT:  Can I ask one question?

13           THE COURT:  You may.

14           THE DEFENDANT:  Is this a commercial crime?  Are all

15   crimes commercial?  Correct?

16           THE COURT:  So we're not going to go down that road

17   today of talking about the substance of the charges against

18   you.  This was -- this is similar to the inquiry that we had

19   last time -- or the discussion we had last time where you were

20   raising the same legal arguments.  Today is not the day for

21   that.

22           THE DEFENDANT:  Sir, I don't want to argue.  I don't

23   want to be in dishonor.  If it's a charge, I accept it for

24   the value and honor in exchange for value and honor.  That's

25   all I want to do.  I could speak with the Prosecution.  I've

already written an affidavit of release for the liens on
Brian Keith Epps. If I were to get my 2017, 2016, 2015 tax
return, I'll release all the other liens.

        THE COURT: Okay. I understand that.

        THE DEFENDANT: That's the only business I have here
today.

        THE COURT: But that's not responsive to what I'm
trying to do right now. What I'm trying to do right now is
just see if you want to represent yourself on this issue.
Okay?

        I understand that's your position -- legal position
that you want to take, but the first thing we need to do is to
get through the issue of whether you want to represent
yourself. Okay?

        So be sure you answer to -- the questions that I
have --

        THE DEFENDANT: Who are the charges against?

        THE COURT: Sir --

        THE DEFENDANT: Who --

        THE COURT: -- right now, we are going to advise you
of the charges against you within the Faretta inquiry.

        THE DEFENDANT: Against me, the --

        MR. HOWARD: Part of what I'm --

        THE DEFENDANT: -- living soul?

        THE COURT: -- going to do is to advise you of

1 your right to counsel on those charges and see if you want to

2 represent yourself on those charges.

3       Okay?  Do you understand?

4       THE DEFENDANT:  Sir, if they're charges, they're

5 commercial.  I'll -- I have no problem endorsing the

6 instrument.

7       THE COURT:  I'm going to ask you some questions.  I

8 want you to respond to them in order for me to see if you can

9 represent yourself.

10       THE DEFENDANT:  Sir, I'd rather not answer any

11 questions.

12       THE COURT:  Okay.  You don't want to repre- -- you

13 don't want to answer any of my questions at all; is that right?

14       THE DEFENDANT:  Sir, I only want to discharge these

15 charges.  That's it.

16       THE COURT:  Let me forewarn you that if you don't

17 answer my questions and conduct a Faretta inquiry, the law

18 provides that you cannot represent yourself at that point

19 because you will not have knowingly, voluntarily, intelligently

20 exercised your right to counsel.

21       THE DEFENDANT:  Sir, do we have a contract?

22       THE COURT:  Sir, you're not being responsive to what

23 I'm trying to talk to you about right now.

24       THE DEFENDANT:  Sir, I don't want to contract with

25 anyone here today.  I just want to discharge these charges, and

that's it.

THE COURT:  If you continue on with this, you're not going to be allowed to represent yourself.

THE DEFENDANT:  Okay.  Well, can I get a bond and we do this later so I can get free and get on the street so I can take care of this in another way?

THE COURT:  We can certainly have a detention hearing, but the detention hearing comes after I see if you want to represent yourself --

THE DEFENDANT:  I --

THE COURT:  -- because you can't have a detention hearing before we cross the threshold of whether you're going to represent yourself.  Okay?  So we're going to go through a Faretta inquiry to see if you want to represent yourself.

THE DEFENDANT:  I don't want to --

THE COURT:  Please --

THE DEFENDANT:  -- represent --

THE COURT:  -- swear in --

THE DEFENDANT:  -- anything, sir.

THE COURT:  -- the defendant at this point.

I'm going to have you sworn in because I'm going to ask you a series of questions on the Faretta inquiry.

Please swear in the defendant at this time.

COURT CLERK:  Please stand and raise your right hand to be sworn.

1          THE DEFENDANT:  No, ma'am.  I don't want to be sworn

2     in.

3          THE COURT:  Are you refusing to be sworn in, sir?

4          THE DEFENDANT:  Sir, I don't want to do any business

5     here.  I just want to discharge these charges that's being

6     presented from --

7          THE COURT:  Madam Clerk --

8          THE DEFENDANT:  -- the United States.

9          THE COURT:  -- you may have a seat.

10          Let the record reflect the defendant has refused to

11     be sworn in at this point in time.

12          How old are you, sir?

13          THE DEFENDANT:  I've always existed, sir.

14          THE COURT:  How far did you go in school?

15          THE DEFENDANT:  Sir, school?  Sir, I'm just here to

16     discharge these charges.  I don't want to do any contracts with

17     anyone.  That's all I want to do.

18          And if I can't do that today, can I at least have a

19     bond so I can get free and we can take care of this at a later

20     date?

21          THE COURT:  The questions I'm asking you are part

22     of a Faretta inquiry to see if you have the ability to

23     represent yourself.  If you're not going to be responsive to

24     my questions, I can't go down the path of you representing

25     yourself.

1       THE DEFENDANT:  Sir, I'm a living soul.  You're

2   talking about a tax account.  I'm not going to represent a tax

3   account.  I'm a living soul.  I'm a living man.  I'm not a tax

4   account.  I'm not a transmitting utility.

5       THE COURT:  All right.  Well, you're not being

6   responsive to my questions.  I'm not going to allow you to

7   represent yourself at this time because you're refusing to

8   participate in a Faretta inquiry.  It's a very basic thing we

9   have to go through.

10      THE DEFENDANT:  Okay.  Well, sir --

11      THE COURT:  So I'm going to appoint Mr. Maines to

12  represent you at this point --

13      THE DEFENDANT:  No, sir.

14      THE COURT:  -- in time.

15      THE DEFENDANT:  I don't agree.  I don't consent to

16  any of this.  I mean, if I can't get a bond and get out of here

17  and handle this at a later date, I don't want to proceed with

18  anything.

19      THE COURT:  Mr. Maines, I appreciate you being

20  willing to represent the defendant at this --

21      THE DEFENDANT:  No, sir.

22      THE COURT:  -- point in time.

23      THE DEFENDANT:  He does not represent me.  I have no

24  contract with him either.  I have no contract with anyone here

25  today.  I don't want to do any of this.  I'm trying to talk to

1    them --

2            THE COURT:  Mr. Pate --

3            THE DEFENDANT:  -- so we can settle this.  That's it.

4            THE COURT:  -- I need you to be quiet because, at

5    this point in time, I'm explaining something to you once again.

6            Because you will not participate in the Faretta

7    inquiry -- you don't want to answer my questions in the Faretta

8    inquiry; correct?

9            THE DEFENDANT:  Sir, I don't want to do any business

10   here today.

11           THE COURT:  Exactly.  Because of that, you have not

12   appropriately exercised your right to represent yourself.  I

13   can't go down that road.

14           THE DEFENDANT:  Sir --

15           THE COURT:  And the law cautions against allowing

16   somebody to represent themselves when they --

17           THE DEFENDANT:  Sir --

18           THE COURT:  -- haven't --

19           THE DEFENDANT:  -- this is a --

20           THE COURT:  -- conducted a Faretta inquiry.

21           THE DEFENDANT:  Is this a court of commerce?

22           THE COURT:  Sir, any more outbursts where you're

23   continuing to talk about things that aren't responsive to what

24   I'm saying are going to require me to have you removed from the

25   courtroom.

1          THE DEFENDANT:  Okay.  That -- that --

2          THE COURT:  So we're going to participate --

3          THE DEFENDANT:  That's fine.

4          THE COURT:  We're going to continue with the

5    arraignment at this time.

6          THE DEFENDANT:  No, sir.  I don't want to contract --

7    you can contract amongst yourselves, but I don't want to have

8    anything to do with this other than discharging the charges.

9    That's it.

10         THE COURT:  Mr. Pate, at this point in time --

11         THE DEFENDANT:  I'm not --

12         THE COURT:  -- I'm going to --

13         THE DEFENDANT:  -- Mr. Pate, sir.

14         THE COURT:  -- advise you.

15         THE DEFENDANT:  Mr. Pate --

16         THE COURT:  Mr. Pate, I'm talking.

17         THE DEFENDANT:  That's a transmitting utility, sir.

18         THE COURT:  Mr. Pate, I'm talking.  I'm going to have

19   to remove you from the courtroom if --

20         THE DEFENDANT:  Sir --

21         THE COURT:  -- you talk while I'm --

22         THE DEFENDANT:  Okay.

23         THE COURT:  -- talking.

24         THE DEFENDANT:  That's fine.  I don't want to do any

25   business here today.  If I can't discharge the charges and

accept them for value and honor in return for value and honor,
I don't have any business here today.  I'm not a transmitting
utility.  I'm a living soul.

THE COURT:  All right.  Mr. Pate, at this point in
time, I'm --

THE DEFENDANT:  I'm not --

THE COURT:  -- going to --

THE DEFENDANT:  -- Mr. Pate, sir.

THE COURT:  -- advise you of the charges --

THE DEFENDANT:  Mr. Pate --

THE COURT:  -- against you.

THE DEFENDANT:  "Mr. Pate" written in all caps is a
transmitting utility.  You can look that up on the UCC --

THE COURT:  Last time -- last warning.

THE DEFENDANT:  -- 121001 --

THE COURT:  Mr. Pate, this is the last --

THE DEFENDANT:  -- 158 --

THE COURT:  -- warning.  If you keep talking --

THE DEFENDANT:  -- 2014.

THE COURT:  -- while I'm talking, one, I'm going to
have you removed from the courtroom.

THE DEFENDANT:  Sir, I --

THE COURT:  And, two, you may --

THE DEFENDANT:  Please --

THE COURT:  -- be --

1    THE DEFENDANT:  -- remove me.

2    THE COURT:  -- subject to contempt of court --

3    THE DEFENDANT:  Sir, I --

4    THE COURT:  -- and the sanctions --

5    THE DEFENDANT:  I do not agree.

6    THE COURT:  -- that would follow --

7    THE DEFENDANT:  I do not --

8    THE COURT:  -- contempt of --

9    THE DEFENDANT:  -- agree.

10   THE COURT:  -- court if you --

11   THE DEFENDANT:  I do not agree.

12   THE COURT:  -- continue to talk while --

13   THE DEFENDANT:  I would like --

14   THE COURT:  -- I am talking.

15   THE DEFENDANT:  -- to be removed from your court.

16   THE COURT:  Mr. Pate --

17   THE DEFENDANT:  I would like --

18   THE COURT:  -- stop talking.

19   THE DEFENDANT:  -- to be removed from the court.  I

20   would like to be removed from the court.  I do not want to do

21   any business.

22          Sir, you don't --

23   THE COURT:  Mr. Pate --

24   THE DEFENDANT:  -- work --

25   THE COURT:  -- listen --

1        THE DEFENDANT:  You don't work for me, sir.

2        THE COURT:  -- to Mr. Maines at this point in time.

3        Go ahead, Mr. Maines.

4        THE DEFENDANT:  I do not consent, sir.  I do not want

5   to do any business here today.

6        THE COURT:  Not yet, Marshal.

7        THE DEFENDANT:  I do not --

8        THE COURT:  Mr. Pate --

9        THE DEFENDANT:  I don't want to do any business here

10  today.

11       THE COURT:  -- you understand that I'm going to have

12  you removed from the courtroom at this time if you don't stop

13  talking?

14       THE DEFENDANT:  That's fine.

15       THE COURT:  All right, Mr. Pate.  I'm going to advise

16  you --

17       THE DEFENDANT:  That's fine.

18       THE COURT:  -- of the charges against you.

19       THE DEFENDANT:  I'm not Mr. Pate.  And any charges --

20       THE COURT:  All right.  Marshal, please --

21       THE DEFENDANT:  -- that you have --

22       THE COURT:  -- remove him from the courtroom.

23       THE DEFENDANT:  -- I accept for value in return for

24  value.

25       THE COURT:  The record will reflect that Mr. Pate,

while cooperative at the beginning of today's hearing,

unfortunately refused to participate in a Faretta inquiry

and continued to speak over the Court while the Court was

attempting to conduct an arraignment in his presence.

At this point in time, the marshals are going to

remove him from the courtroom.

(The defendant exited the courtroom.)

THE COURT:  Mr. Maines, I appreciate your willingness

to continue to, as an officer of the court, represent a client

even when he doesn't want you to represent him.

We're going to take about a 5-minute recess because

what I'm going to do to remove the prejudice from this is

Mr. Pate is going to be placed in a cell where he will be able

to hear what we are doing.  We won't be able to hear Mr. Pate.

He's represented by his attorney at this hearing, but we --

he will be able to hear me advise him of the charges against

him and advise him of the penalties he could face regarding

those charges and go through the plea -- the preliminary plea

process.

So he's absented himself from the hearing by the way

of his conduct.  But in order to alleviate some of the

prejudice of his own conduct, he will be in a cell where he can

hear us, but he won't be able to interrupt the business of the

court.

So we'll be in recess for 5 minutes while the

1    marshals make that arrangement.

2              COURT SECURITY OFFICER:  All rise.

3              The court's in recess.

4        (A recess was taken from 8:46 a.m. to 8:51 a.m.)

5              COURT SECURITY OFFICER:  All rise.

6              This honorable court is back in session.  Be seated

7    and come to order.

8              THE COURT:  All right.  We are back on the record

9    in Case Number 1:18-CR-45, which is *The United States of*

10   *America v. Timothy Jermaine Pate.*

11             As the record will reflect, before we went into a

12   brief recess, we had Mr. Pate removed from the courtroom due to

13   his conduct of continually interrupting the Court and refusing

14   to participate in the hearing even though the Court forewarned

15   him now on three different occasions and numerous times within

16   those occasions that his conduct would, one, subject him to the

17   potential to be removed from the courtroom and, two, potential

18   sanctions under the contempt powers of the Court.

19             I've exercised, at this time at least, the first of

20   those options, to remove him from the courtroom.  But in order

21   to reduce the prejudice that he may inure from the -- removing

22   him from the courtroom or the prejudice that he may suffer from

23   removing him from the courtroom, I have arranged for him to be

24   placed in a cell where, if he so chooses, he can pay attention

25   to and listen to this hearing -- this arraignment and the

hearing moving forward on that.

I will note that Mr. Howard from the United States Attorney's Office is still in the courtroom. Mr. Maines is in the courtroom. And, again, he is representing Mr. Pate because Mr. Pate has not appropriately gone through a Faretta inquiry. He refused to go through the Faretta inquiry, so he has not voluntarily, knowingly, and intelligently exercised his right to represent himself.

So at this point in time, I'm going to read into the record the charges that have been filed against Mr. Pate.

And, again, Mr. Pate is in a location where he can hear this. But in addition, the record will reflect that the Court has already provided Mr. Pate with a copy of the indictment against him, provided him with that copy at his initial appearance.

Is that right, Mr. Maines?

MR. MAINES: Yes, Your Honor.

THE COURT: Okay. The indictment charges him in Counts 1 and 2 with filing false retaliatory lien against federal official in violation of 18, United States Code, Section 1521.

Specifically, the indictment alleges that on or about March 6, 2018, in Richmond County, within the Southern District of Georgia, the defendant, Timothy Jermaine Pate, a/k/a Akenaten Ali, filed in a public record with the U.S. District

Court for the Southern District of Georgia two documents entitled "Notice of Claim of Maritime Lien," which are false liens and encumbrances against the real and personal property of officers and employees of the United States Government described in 18, United States Code, Section 1114, on account of the performance of official duties by individuals listed below by their initials, knowing and having reason to know that such liens and encumbrances were false and contained materially false, fictitious, and fraudulent statements and representations, including a statement that the individuals listed below owed a debt to Defendant in the following amounts:

Count 1, government employee or official J.A.K., lien amount $33 million; Count 2, government employee or official B.K.E., lien amount $15 million; all in violation of Title 18, United States Code, Section 1521.

Counts 3 through 5 allege that Mr. Pate committed the offense of filing false retaliatory lien against a federal official in violation of 18, United States Code, Section 1521.

On or about May 8th [sic], 2018, in Richmond County, within the Southern District of Georgia, the defendant filed in a public record with the U.S. District Court for the Southern District of Georgia three documents entitled "Notice of Claim of Maritime Lien," which are false liens and encumbrances against the real and personal property of officers and employees of the United States Government described in 18,

United States Code, Section 114 [sic], on account of the performance of official duties by individuals listed below by their initials, knowing and having reason to know that such liens and encumbrances were false and contained materially false, fictitious, and fraudulent statements and representations, including a statement that the individuals listed below owed a debt to Defendant in the following amounts:

Count 3, government employee or official D.D.D., lien amount $15 million; Count 4, E.M.T., lien amount $15 million; Count 5, J.J.L., lien amount $15 million; all in violation of Title 18, United States Code, Section 1521.

Counts 6 through 10 allege filing false retaliatory lien against federal official in violation of Code Section 1521.

It is alleged that on or about May 8 -- May 7th -- excuse me -- 2018, in Richmond County, within the Southern District of Georgia, the defendant filed in a public record with the Richmond County Clerk of Superior Court three Form UCC-1 Financing Statements, which are false liens and encumbrances against the real and personal property of officers and employees of the United States Government described in 18 U.S.C. § 1114, on account of the performance of official duties by those individuals, knowing and having reason to know that such liens and encumbrances were false and contained materially false, fictitious, and fraudulent statements and

representations, including a statement that the individuals listed below owed a debt to Defendant in the following amounts.

The indictment then includes the chart -- a similar chart that lists account, the government employee or official, and a lien amount in the following manner:

Count 6, J.A.K., lien amount $33 million; 7, B.K.E., lien amount $15 million; 8, J.J.L., lien amount $15 million; 9, E.M.T., lien amount $15 million; 10, D.D.D., lien amount $15 million; all in violation of 18 U.S.C. § 1521.

11 through 15 allege that the defendant committed the offense of false bankruptcy declaration in violation of 18, United States Code, Section 1523.  Specifically, the grand jury alleges that on or about May 21st, 2018, in Richmond County, within the Southern District of Georgia, the defendant knowingly and fraudulently made a materially false -- material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, *In re Timothy Jermaine Pate a/k/a Akenaten Ali*, Number 18-00101, by submitting an involuntary petition, falsely and fraudulently named the individuals listed below by their initials as debtors and the defendant as a creditor, and in which petition Defendant claimed the individuals listed below owed him the amounts listed and that such debt was not the subject of a bona fide dispute as to liability or amount, when,

as Defendant knew, the claimed debt was not owed to him nor disputed [sic].

Again, there's a chart that lists the counts, 11 through 15; the named debtors; and the amounts claimed.

The first count in that chart, being Count 11, named debtor J.A.K., amount claimed $33 million; 12, J.J.L., $15 million; 13, B.K.E., $15 million; 14, D.D.D., $15 million; 15, E.M.T., $15 million; all in violation of 18, United States Code, Section 1523.

Counts 16 through 18 allege filing false retaliatory lien against a federal official in violation of 18 U.S.C. 1521.

It's alleged that on or about June 15th, 2018, in Richmond County, in the Southern District of Georgia, that Mr. Pate filed in a public record with the U.S. District Court for the Southern District of Georgia three documents entitled "Notice of Claim of Maritime Lien," which are false liens and encumbrances against the real and personal property of officers and employees of the United States Government described in 18 U.S.C. 1114, on account of the performance of official duties by individuals listed below by their initials, knowing and having reason to know that such liens and encumbrances were false and contained materially false, fictitious, and fraudulent statements and representations, including a statement that individuals listed below owed a debt to Defendant in the following amounts:

1        16 -- Count 16, the government employee or official

2   would be L.B.R., lien amount $15 million; 17, B.K.E., lien

3   amount $100 million; 18, S.D.B., lien amount $33 million; all

4   in violation of 18 U.S.C. 1521.

5        The grand jury returned this indictment by way of a

6   true bill.

7        Those are the charges filed against Mr. Pate.  Now,

8   he is presumed innocent of these charges, and it's the

9   Government's burden beyond -- to prove his guilt beyond a

10  reasonable doubt.

11       But it's important that we put into the record and

12  that Mr. Pate understand the maximum penalties he could face if

13  he were found guilty of the charges against him.

14       So, Mr. Howard, at this time, will you certify for

15  the Court, from the Government's perspective, the maximum

16  penalties Mr. Pate faces should he be found guilty of the

17  charges against him, of course understanding that he is

18  presumed innocent of those charges.

19       MR. HOWARD:  Your Honor, for Counts 1 through 10 as

20  well as for Counts 16 through 18, for each of those counts, the

21  defendant faces not more than 10 years of imprisonment, not

22  more than a $250,000 fine, not more than 3 years of supervised

23  release, and a $100 special assessment.

24       For Counts 11 through 15, for each of those counts,

25  the defendant faces not more than 5 years of imprisonment, not

more than a $250,000 fine, not more than 3 years of supervised release, as well as a $100 special assessment.

THE COURT:  Very good.  Thank you.

As to -- at this point in time, typically, we would have Mr. Pate enter a plea of guilty or not guilty to the charges against him.

But, Mr. Maines, given that he's absented himself from the hearing, the law provides that the Court will enter a not guilty plea on his behalf.  Whenever, through his -- a defendant's conduct, they indicate a plea of not guilty by way of their conduct but their -- stand silently by, or refuse to respond to the Court's inquiry as to how they enter a plea, the Court enters a plea of not guilty on their behalf.

So the plea of not guilty has been entered.  Mr. Pate has entered a plea of not guilty to the charges against him. The Court has entered that on his behalf was a more accurate way to state that.

So let's discuss discovery in this case so that we can set a scheduling order out in the case.

Counsel, as you know, we typically provide 14 days for the filing of pretrial motions from the date of arraignment; however, the Court is always open to extending that deadline where circumstances require.

I will state at the outset that, given the nature of the charges against the case, given the difficulty that

Mr. Maines is operating under in that he's got a client who's
not, at this point in time, wanting to participate in the
hearings, and the conduct that the Court has observed, it
appears that we're going to need a little more than -- time
than that for the filing of pretrial motions.

But for us to get a better picture of the type of
discovery that Mr. Pate and Mr. Maines are going to have to
review, Mr. Howard, tell us what the discovery in this case
entails.

MR. HOWARD:  Your Honor, we currently have over
50 documents, about 200 megabytes of information.  We expect to
get further electronic evidence as well as further documents,
so the discovery here is ongoing.  It primarily, right now, is
documentary although, again, we do expect the size of that as
well as the number of those documents to expand as we're
awaiting some additional discovery as well as the results
from a computer search as well as some electronic devices and
searches of those.  Once -- we'll get those aggregated and
provided to defense counsel either via the cloud or just on a
disc or hard drive.

THE COURT:  Very good.

Mr. Maines, how much time do we need for filing the
pretrial motions in the case?

MR. MAINES:  Your Honor, the materials that the
U.S. Attorney referenced, I'm sure that will not take me a long

time to go through if it's only 200 megabytes.  Your Honor, I'm thinking 30 days.

Your Honor, I do anticipate filing a motion for a competency evaluation in this matter.  His behavior seems to indicate to me that -- if the -- if his refusal to participate is willful, then he might be competent, but it might very well be that he's not mentally competent.  So I do believe, for me to discharge my duties, I would absolutely have to file a competency motion.

THE COURT:  Understood.

MR. HOWARD:  And, Your Honor, just to supplement a couple of things, one, we certainly have no opposition to 30 days.  I do expect additional charges to be filed in this case, and we'll certainly provide discovery as we receive it.  The 200 megabytes, that's going to greatly expand once we get some of this electronic evidence back.  So it's kind of a -- it's what we have now, but it's certainly, I think, a misnomer in terms of the overall discovery that's going to happen in this case.

THE COURT:  Well, given that announcement, I'm going to provide 45 days from today's date for the filing of pretrial motions.  Opposing party shall have 21 days for the response for the pretrial motions.

I find that while the Court obviously is not going to allow this case to lag, the defendant's interest in a

speedy trial and the public's interest in a speedy trial are
outweighed by the defendant's need to prepare for trial and the
defendant's need to prepare pretrial motions and to conduct the
inquiry that Mr. Maines has indicated that he feels may need to
be conducted in this case.  That, at this time, is also
warranted by the unique circumstances of the case in that we
have a defendant who, at this point in time at least, does not
want to participate in the hearing.

So this additional time that we're filing --
providing for the filing of pretrial motions should be excluded
from the calculations under the speedy trial clock as well as
any time that those motions are pending per the statute.

Okay.  We'll enter that scheduling order.  Obviously,
the magistrate judge will then review any discovery motions you
have.  We're in a unique position right now in the court in
that we've got a district judge presiding over here, and it's
typically by a magistrate judge.

But we wanted to do that because while we're getting
a new magistrate judge on board, we didn't want Mr. Pate to sit
without process simply because we're getting a new magistrate
judge on board.  So that's -- we're having the hearing on that.
But I only put that for the record just so you know that if
you've got discovery issues and other things you need to bring
forward, those matters will be referred to the magistrate judge
in the case.

1          Typically, at this point in time, we'd move on to the

2    question of detention.

3          Is the Government moving to detain Mr. Pate?

4          MR. HOWARD:  We are, Your Honor.

5          THE COURT:  Mr. Maines --

6          MR. MAINES:  Your Honor, I think, to discharge my

7    duties, I have to, on his behalf, request bond.  Pretrial

8    services reports indicate that he does not have any felony

9    convictions, that he is not currently under any court

10   supervision or sentence at this moment.  He does have a series

11   of misdemeanor convictions.  And I'll let the matter rest with

12   that.  But we would ask for a reasonable bond on his behalf.

13         THE COURT:  You know, I typically don't like to kick

14   bond hearings down the road because I don't like for people to

15   sit -- be detained without process, as I just said, but the

16   statute provides that, in good-cause situations, I can extend

17   the hearing beyond the typical 3 days at the Government's

18   request and 5 days at the defendant's request.

19         Now, some may argue that, really, that 3-day or 5-day

20   clock started running today because of the fact that we really

21   only had a meaningful initial appearance today.  But even

22   construing it as though the clock started to run at his initial

23   appearance down in Brunswick, I don't want to prejudice the

24   defendant by going forward with a bond hearing without him

25   present.  I want to continue the hearing from today.

1    That's what I'm going to order is it's continued from
2    today because he did indicate when he was at the table that he
3    wanted a bond hearing.  And so it may be the situation where he
4    chooses to participate in the bond hearing after his attorney
5    gets a chance to talk with him and after his attorney gets the
6    chance to build up a defense to the motion from the Government
7    for bond.  So to really give him a fighting chance at this bond
8    hearing, the only real way to have a meaningful bond hearing is
9    to give some time for preparation for the bond hearing.

10    Now, the statute provides that, during the
11    continuance, he will continue to be detained.  And we're not
12    going to let it drag, but I really think that this is an
13    extraordinary situation where, if we went forward with the bond
14    hearing today, while we may be complying with the letter of the
15    statute, we're certainly not complying with the spirit of the
16    statute, and we're not giving the defendant a fair opportunity
17    to contest the issue of bond.

18    Regardless of his conduct in the court, we're not
19    going to hold that against him as to the bond inquiry.  Okay?
20    So we're going to continue that out.  I don't have a date right
21    now for that.  That will likely be before the magistrate judge.

22    I'm going to order that he be detained here in
23    Savannah because that's where his attorney is.  He's going to
24    have easier access to the attorney.  And likely, this case is
25    going to be handled on the magistrate side by a magistrate

judge that's down in Brunswick, so some of these preliminary matters we can handle here in Savannah rather than traveling all the way to Augusta for those issues. But he'll be here in Savannah where his attorney will have more ready access to him.

MR. HOWARD: And just for clarification, though, this was an Augusta Division case.

Is it now considered a Savannah Division?

THE COURT: It's not. It's still an Augusta Division case. It's just that, since we are in the same district, we can have a hearing in Savannah even if it's an Augusta Division case.

Now, obviously, we wouldn't have a trial or any other proceeding. But these preliminary proceedings, we can have those here in Savannah. And we may do that on some of these matters, particularly given the security concerns that we have and the fact that if the defendant absents himself from the hearing, as he has today, that we are able to accommodate him more readily here in Savannah.

To that end, I should note -- I noted that Mr. Pate can hear us and -- he's able to hear us. There's also video capability to where, if he chose to, he can see us. I can see him on the screen in front of me right now. If he chose to, he could turn around, and he could watch.

Isn't that right, Ms. Clerk, that he could --
Madam Clerk, he could -- he can watch these proceedings as

well?

So we've done everything we can to accommodate -- or to alleviate, rather, the prejudice that has resulted from his own conduct.

And, Mr. Pate, we're going to continue your detention hearing because I want to give you the opportunity to participate in that detention hearing. I don't want you to get an order detaining you for the remainder of this case without you having a meaningful opportunity.

But let me tell you that if you continue to do what you did today, which is to interrupt the Court and to interrupt the court's operations, to be nonresponsive, to talk over the Court, I can't conduct business -- the magistrate judge can't conduct business with someone disrupting the court, and so we're going to continue to have to do what we did today.

Additionally, Mr. Pate, if you want to represent yourself in the case, you're going to have to demonstrate to the Court that you made a knowing, voluntary, and intelligent waiver of your right to counsel because the right to counsel is one of the most important constitutional rights that we have in our country. It protects even those who don't represent -- who don't recognize our constitution. It protects everyone in this country, particularly when facing such serious charges as been have -- criminal charges as have been levied in this case.

So what we've done today is we've advised the

defendant of the charges against him, the federal criminal charges that the grand jury of this district returned against him.  We have advised him of the maximum penalties he could face if he were to be found guilty of those charges.  We have entered a plea of not guilty on his behalf.  We have set a scheduling order in this case.  Of course, we have advised him of the rights that he has on these charges.  We've discussed the issue of discovery.

But we have continued the detention hearing so that the defendant may have the opportunity to represent himself and to, at the very least, be present at the detention hearing. And we have advised the defendant of the consequences that he will face if he refuses to participate in hearings or if he continues to disrupt hearings when we try to have him present.

That's all the Court can resolve today.  That's all that was before the Court today.

Mr. Howard, is there anything further from the Government regarding Mr. Pate's case at this time?

MR. HOWARD:  No, Your Honor.

THE COURT:  Mr. Maines, anything further from the defendant at this time?

MR. MAINES:  No, Your Honor.

THE COURT:  All right.  Ms. Slater, anything further at this time?

COURT CLERK:  No, Your Honor.

1          THE COURT:  All right.  We'll be adjourned.

2          COURT SECURITY OFFICER:  All rise.

3     (Proceedings concluded at 9:12 a.m.)

                    C E R T I F I C A T E

     I, Victoria L. Root, Certified Court Reporter, in and for
the United States District Court for the Southern District of
Georgia, do hereby certify that the foregoing transcript of the
proceedings held in the above-entitled matter was transcribed
to the best of my ability from the Court's electronic recording
system and that the transcript page format is in conformance
with the regulations of the Judicial Conference of the United
States.

     WITNESS MY HAND AND SEAL this 15th day of September, 2018.




                              _____
                              VICTORIA L. ROOT, CCR B-1691
                              United States Court Reporter
                              Southern District of Georgia
                              Savannah Division




Post Office Box 10552
Savannah, Georgia  31412
(912) 650-4066