FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 4:29 pm, May 03, 2019*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 1:18-cr-45 |
| TIMOTHY JERMAINE PATE a/k/a AKENATEN ALI, | |
| Defendant. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Timothy Jermaine Pate's motion to evaluate Mr. Pate' competency, doc. 28, and the Government's request for an examination as to whether Mr. Pate was insane at the time of the offenses charged in this case, doc. 40 at 2. The Court held a hearing on these matters on May 2, 2019. Prior to this hearing, Dr. Lisa B. Feldman conducted a psychiatric evaluation of Defendant and authored a report ("the Psychiatric Report") summarizing her findings. Doc. 47. Based on the entire record in this case, including the Psychiatric Report, I find Mr. Pate is capable of understanding the charges against him and meaningfully consulting with his attorney about his defense, and that Mr. Pate was able to appreciate the nature and quality of his actions at the time of the alleged offenses. Therefore, I **RECOMMEND** the Court find that Defendant Pate is competent to stand trial and proceed with this case and that Mr. Pate was not insane at the time of the offenses charged in this case.

### BACKGROUND

The United States charges Mr. Pate with filing false retaliatory liens against federal officials and making a false bankruptcy declaration. Doc. 21. Beginning with Defendant's

initial appearance and continuing through several other hearings, Mr. Pate refused to cooperate with proceedings or engage in any dialog with the Court. Docs. 8, 13, 18. During hearings, Mr. Pate made various incoherent arguments regarding "commercial presentments" and the Uniform Commercial Code and has exclaimed that he does not consent to the Court's jurisdiction over him. See, e.g., Doc. 18. Mr. Pate has continually disrupted proceedings in this case, requiring the Court—more than once—to remove Mr. Pate from the courtroom. Id. The Court appointed counsel to represent Mr. Pate at his initial appearance. Doc. 8. During that hearing and at subsequent hearings, Mr. Pate has complained about being represented by appointed counsel but has refused to engage in any meaningful exchange with the Court regarding legal representation, making it impossible for the Court to conduct a Faretta hearing to determine if he was knowingly, voluntarily, and intelligently requesting to proceed pro se. Doc. 18. As such, Mr. Pate has been represented by appointed counsel since his initial appearance and continues to be represented.

At Mr. Pate's initial appearance and arraignment on the superseding indictment in this case, Mr. Pate's appointed counsel made an unopposed motion asking the Court to order an evaluation of Mr. Pate's mental competency. Docs. 28, 32. During that hearing, Mr. Pate was again disruptive, the Court removed him from the courtroom, and he was placed in an area where he could view proceedings remotely. Doc. 32. Also during the hearing, the Government requested that Mr. Pate be examined pursuant to 18 U.S.C. § 4242(a) to determine if he was insane at the time of committing the alleged offenses. Id. The Court issued an Order based on 18 U.S.C. § 4241(b) granting defense counsel's motion and ordering that Mr. Pate be evaluated by a psychiatrist or psychologist under 18 U.S.C. §§ 4247(b) and (c). Doc. 29. However, the

Court declined to order that Mr. Pate be evaluated for insanity because he had not provided notice under the Federal Rules of Criminal Procedure that he intended to rely on an insanity defense. Id. Defense counsel subsequently provided notice of his intent to pursue an insanity defense. Doc. 39. The Court ordered that Mr. Pate be subjected to an insanity evaluation along with his competency evaluation. Doc. 41.

Pursuant to the Court's Orders, Dr. Lisa Feldman, a forensic psychologist, conducted a psychiatric evaluation of Mr. Pate at the Federal Detention Center in Miami, Florida, from December 3, 2018 to February 2019 and provided a report of her evaluation to the Court. Doc. 46-1. Dr. Feldman explained that, although the nature and purpose of Mr. Pate's evaluation was explained to him and "it appeared that Mr. Pate understood those procedures," Mr. Pate stated that he did not wish to be evaluated and would not complete any psychological tests or interviews . Id. at 2–3. Although Mr. Pate refused to undergo any psychological testing, Dr. Feldman and members of the facility's staff observed and interacted with Mr. Pate during the period of evaluation. Id. Dr. Feldman also conducted a comprehensive review of the docket in this case and in Mr. Pate's other civil filing, as well all information on Mr. Pate's background the Bureau of Prisons was able to provide. Id. at 2–3. Dr. Feldman also corresponded with the assigned Assistant United States Attorney in this case and Mr. Pate's counsel to obtain additional background information regarding Mr. Pate. Id. at 4. Dr. Feldman reviewed certain monitored telephone conversations and e-mail communications by Mr. Pate while he was at the Federal Detention Center. Dr. Feldman did not find any evidence that Mr. Pate had a history of mental health problems. Id. at 5.

Dr. Feldman then made several evaluation findings based off her interactions with Mr. Pate. Id. at 5–7. She observed that Mr. Pate functioned well at the Federal Detention Center and that Defendant "exhibited organized, rational, sequential, and coherent thought processes." Id. at 6. Dr. Feldman also indicated that during monitored phone calls, Mr. Pate's thoughts "revolved on his current legal issues and his defense strategy." Id. Dr. Feldman noted that Mr. Pate did not require or receive any medical or psychiatric treatment during his evaluation. Id. at 6–7.

Dr. Feldman concluded Mr. Pate satisfied the criteria for adult antisocial behavior but did not diagnose Mr. Pate with antisocial personality disorder, which would draw on a history of conduct disorder in childhood or adolescence. Id. Dr. Feldman described Mr. Pate's mental state as "stable" and declined to recommend any psychiatric treatment. Id. Regarding competency, Dr. Feldman stated that Mr. Pate's refusal to cooperate in this proceeding and the making of many nonsensical arguments "are not believed to be based on any delusional premise, or any symptoms of an active phase of mental illness, but rather based on a volitional attempt to thwart the current legal proceedings." Id. at 8. Dr. Feldman explained that she is familiar with Mr. Pate's peculiar beliefs and defense strategy and has seen a recent increase in evaluation requests for other "sovereign citizens" employing similar defenses. Id. Dr. Feldman concluded Mr. Pate's "defense strategies are not believed to be based on confused or delusional thinking, or any symptoms of an active phase of mental illness." Id. Dr. Feldman ultimately concluded there was no evidence to believe Mr. Pate was unable to understand the nature and consequences of the proceedings against him, and that Mr. Pate "possesses the capacity to assist his attorney in his own defense, if motivated to do so." Id. Dr. Feldman ultimately recommended Mr. Pate be found competent to proceed in this case. Id.

Regarding Mr. Pate's insanity defense, Dr. Feldman stated her evaluation of Mr. Pate's mental status did "not suggest the presence of mental illness that would have interfered with his criminal responsibility at the time of the alleged offense." Id. To the contrary, Dr. Feldman noted Mr. Pate's actions appeared "deliberate and organized without evidence of bizarre behavior[,]" and that Mr. Pate's motivation for the alleged offense appeared to be based on his dissatisfaction with the outcome of a civil case he had filed. Id. Dr. Feldman concluded by stating it was her opinion "that Mr. Pate was not suffering from the symptoms of a mental disorder or disease that were causally related to the alleged offenses that would have resulted in his inability to appreciate the nature and quality or the wrongfulness of his acts." Id.

Following review of Dr. Feldman's report, the parties entered a Joint Stipulation Regarding Competency Report, agreeing that Dr. Feldman's report was factually correct, and that Defendant is competent to stand trial. Doc. 47. The parties also waived the right to present additional evidence at a competency hearing. Id. Nonetheless, out of an abundance of caution, the Court held a competency hearing on May 2, 2019. At the hearing, the Government and defense counsel reiterated their agreement that Mr. Pate is competent to stand trial.[1] Doc. 48. Defense counsel confirmed that he had corresponded directly with Dr. Feldman and provided information to her regarding his interactions with Mr. Pate. At the hearing, Mr. Pate continued to be disruptive and unresponsive to the Court's directions and questions. Mr. Pate, however, remained in the courtroom throughout the entire May 2, 2019 hearing. Mr. Pate did not make

---

[1] Counsel did raise other issues related to discovery and an order restricting Defendant's mail, and the Court address these matters in a separate Order.

any substantive comment regarding his competency to stand trial, his insanity defense, or his psychiatric evaluation. Id.

## DISCUSSION

"[C]ompetence is the base upon which other constitutional rights balance[.]" United States v. Wingo, 789 F.3d 1226, 1228 (11th Cir. 2015); see also Cooper v. Oklahoma, 517 U.S. 348, 354(1996) (The United States Supreme Court has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process.") (internal quotation and citation omitted); Eddmonds v. Peters, 93 F.3d 1307, 1314 (7th Cir. 1996) ("The Constitution forbids trial of one who, for whatever reason, is unfit to assist in his own defense because our adversarial system of justice depends on vigorous defenses.").

Incompetency means "suffering from a mental disease or defect rendering [the defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). A defendant is not entitled to a presumption of incompetency, and he assumes the burden of proof to establish his incompetency by a preponderance of the evidence. Cooper, 517 U.S. at 355; Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005). The legal test for competency is "whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402 (1960)); see also United States v. Cruz, 805 F.2d 1464, 1479 (11th Cir. 1986).

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995). Thus, "the mere presence of a mental disease or defect is not sufficient to render a defendant incompetent . . . ." United States v. Rothman, No. 08-20895-CR, 2010 WL 3259927, at *7 (S.D. Fla. Aug. 18, 2010) (citing United States v. Liberatore, 856 F. Supp. 358, 360 (N.D. Ohio 1994)). "Incompetency to stand trial is not defined in terms of mental illness. As such, a defendant can be competent to stand trial despite being mentally ill and similarly a defendant can be found incompetent to stand trial without being mentally ill." United States v. Williams, No. 5:06-cr-36, 2007 WL 1655371, at *5 (M.D. Fla. June 7, 2007) (internal citation and quotation marks omitted).

After an extensive evaluation, Dr. Feldman determined that Mr. Pate is competent to stand trial in this case. Dr. Feldman reached this conclusion after observing and speaking with Mr. Pate, as well as reviewing his medical records and criminal history. Defense counsel and the Government have stipulated to Dr. Feldman's conclusions. And there is no evidence in the record that contradicts Dr. Feldman's conclusions. Indeed, neither Mr. Pate nor the Government disputed Mr. Pate's competency at the May 2, 2019 hearing conducted after his psychiatric evaluation. While the undersigned had reasonable cause to believe Mr. Pate may have suffered from a mental disease or defect at the time I ordered Mr. Pate's competency evaluation, Dr. Feldman's thorough evaluation and the lack of any contradictory evidence have removed any concerns or doubt about Mr. Pate's competency. The undersigned agrees with Dr. Feldman's conclusion that Mr. Pate's peculiar behavior and statements in these proceedings are not the result of mental disease or defect, but, instead, are a "volitional attempt to thwart the current

legal proceedings." I, therefore, **RECOMMEND** the Court find that Mr. Pate is competent to stand trial.

Regarding Mr. Pate's sanity at the time of the offenses, Dr. Feldman determined that Mr. Pate was able to appreciate the nature and quality of his actions at the time of the alleged offense. To successfully assert an insanity defense, a defendant must show by clear and convincing evidence that he was unable to appreciate the nature and quality or wrongfulness of his actions at the time of the alleged offense. United States v. Freeman, 804 F.2d 1574, 1577 (11th Cir. 1986). Dr. Feldman concluded there was no evidence of any previous mental disorder or defect in Mr. Pate's history and that his actions at the time of the offense appeared to be deliberate. Nothing at the May 2, 2019 hearing suggested otherwise, and defense counsel and the Government have stipulated to Dr. Feldman's conclusions. To be clear, there is no other evidence indicating Mr. Pate was insane at the time of the alleged offenses. Based on these facts, it is the undersigned's opinion that Mr. Pate has failed to prove by clear and convincing evidence that he was unable to appreciate the nature and quality or wrongfulness of his actions at the time of the alleged offense. Therefore, I **RECOMMEND** the Court find that Mr. Pate was not insane at the time of the offenses charged in this case.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court find Mr. Pate competent to stand trial and proceed with this case, and I **RECOMMEND** the Court find that Mr. Pate was not insane at the time of the offense.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of May, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA